UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON

**ALPHONSO HARPER,**

    **Movant,**

v.                                                    Case No. 2:12-cv-04059
                                                       Case No. 2:09-cr-00179

**UNITED STATES OF AMERICA,**

    **Respondent.**

**PROPOSED FINDINGS AND RECOMMENDATION**

    Pending before the Court is the movant, Alphonso Harper's Amended Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255 (ECF No. 130, 138-1). This matter is assigned to the Honorable John T. Copenhaver, Jr., United States District Judge, and it is referred to the undersigned United States Magistrate Judge for submission of proposed findings and a recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B).

**PROCEDURAL HISTORY**

*The defendant's plea agreement and waiver of claims*

    Alphonso Harper (hereinafter "the defendant") is serving a 121-month sentence, to be followed by a three-year term of supervised release, upon his guilty plea, pursuant to a written plea agreement, to one count of aiding and abetting the distribution of cocaine base, also known as "crack," in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. The defendant's written plea agreement included a waiver of the defendant's right to appeal, except as to the district court's determination of the Sentencing Guideline range,

upon a properly preserved objection, and a waiver of his right to attack his conviction and sentence collaterally, with the exception of claims of ineffective assistance of counsel. The plea agreement also included a Stipulation of Facts which stated as follows:

> On July 9, 2009, the [sic] a confidential informant ("informant") while working under the direction and control of Charleston Police Officers, engaged in a series of recorded telephone conversations with Brandi Adkins ("Ms. Adkins") relating to consummating a controlled purchase of cocaine base from Ms. Adkins and Defendant, Alphonso Harper ("Mr. Harper" or "AJ"). During one recorded phone conversation, in part, Ms. Adkins told the informant that AJ would agree to sell the informant an ounce of cocaine base for $1200.
>
> Ms. Adkins and the informant ultimately agreed to meet to consummate the drug transaction at the 7-11 convenience store, located at 841 Washington Street, West, Charleston, West Virginia. At approximately 3:35 p.m., the informant walked from an undercover vehicle, being driven by an undercover officer, onto the parking lot of the 7-11 convenience store. A short time later, Ms. Adkins, alone, drove her vehicle onto the lot, and the informant stepped into the front passenger seat. The informant handed Ms. Adkins $1200 in pre-recorded United States currency that she had been given, by officers, to use to purchase the cocaine base. Ms. Adkins told the informant that she didn't have "it" (referring to the cocaine base), and that she had to pick up Mr. Harper. Ms. Adkins needed to pick up Mr. Harper so he could assist her in retrieving the cocaine base, and providing the cocaine base to the informant. After picking up Mr. Harper, they ultimately drove to Ms. Adkins's residence, located at 425 Mary Street, Charleston, West Virginia. As they drove to retrieve the cocaine base, a small audio/video device, that was in the possession of the informant, captured and recorded Mr. Harper sitting in the front passenger seat.
>
> Ms. Adkins and Mr. Harper went inside Ms. Adkins's residence and retrieved a quantity of cocaine base as the informant waited outside. Mr. Harper and Ms. Adkins returned to the car, where Ms. Adkins handed the informant the quantity of cocaine base, that was far less than the ounce which the informant expected to receive. Ms. Adkins and Mr. Harper then drove the informant back to the Hardees parking lot where Ms. Adkins stepped out of the vehicle, met again with the undercover officer, and provided him with the quantity of cocaine base.
>
> Several hours later, still on July 9, 2009, at approximately 8:30 p.m., police officers executed a search warrant at Ms. Adkins' residence.

> At the time, the officers also had secured arrest warrants for both Ms. Adkins and Mr. Harper. Ms. Adkins and Mr. Harper were inside the house, alone. Police officers arrested Mr. Harper and recovered approximately $3,680 from his possession. That sum included $1150 of the $1200 in pre-recorded United States currency that the informant used to purchase the cocaine base from Ms. Adkins and Mr. Harper earlier that day. In addition, among other items recovered by officers, was a digital scale that contained cocaine residue.
>
> The aforementioned quantity of cocaine base was analyzed at the Drug Identification Section of the West Virginia State Police Forensic Laboratory, and was determined to contain the presence of cocaine base and weighed approximately 7.27 grams. The aforementioned controlled drug transaction occurred in Charleston, Kanawha County, West Virginia, which is located in the Southern District of West Virginia.

(ECF No. 44 at 8-10).

### *The defendant's sentencing proceedings*

A Presentence Investigation Report ("PSR") was prepared by a United States Probation Officer, which was revised several times. On September 9, 2010, the defendant's initial sentencing hearing was continued to enable the parties to attempt to resolve objections to the PSR. (ECF No. 70). Then, on October 20, 2010 the defendant's court-appointed counsel, Jacqueline Hallinan, moved to withdraw. (ECF No. 72). Subsequently, attorney Phillip Sword was appointed to represent the defendant. (ECF No. 78).

On January 7, 2011, the defendant filed an Objection to the PSR, which was filed under seal. (ECF No. 91). On January 11, 2011, the defendant filed a Sentencing Memorandum, with attached exhibits. (ECF No. 94). Based upon the defendant's stipulation, the third revised PSR, dated January 3, 2011, attributed 27 grams of cocaine base to the defendant as the offense conduct. The PSR attributed a total of 198.45 grams of cocaine base to the defendant as relevant conduct, which included the 27 grams of offense conduct.

3

The defendant's Sentencing Memorandum objected to any attribution of relevant conduct, claiming that it was based upon unreliable information. (ECF No. 94 at 3). The Sentencing Memorandum further states as follows:

> The Government and the Presentence Report attribute relevant conduct to Mr. Harper by virtue of a statement Brandi Adkins made to police officers regarding controlled substance purchases Ms. Adkins attributed to Mr. Harper which were allegedly made from an individual named Mike Hill. Subsequently, Ms. Adkins sent a letter to Mr. Harper's previous attorney retracing her statement and claiming sole responsibility for the purchases. *See* "Letter from Brandi Adkins to Lawyer" attached as "EXHIBIT A."

(*Id.*) The Sentencing Memorandum further asserts that Ms. Adkins was a biased witness driven by jealousy and self-serving interests. (*Id.* at 3-4). The Sentencing Memorandum further stated that, if the defendant was attributed any relevant conduct, it should be the same amount of relevant conduct as his co-defendant, Brandi Adkins, which was 139.8 grams.[1] (*Id.*)

The defendant's Sentencing Memorandum also challenged the PSR's recommendation that the defendant be denied a reduction for acceptance of responsibility based upon his alleged conduct while awaiting sentencing. The PSR asserted that the defendant engaged in three separate acts of violence and misconduct while he was an inmate at the South Central Regional Jail ("SCRJ"), consisting of an alleged robbery of commissary goods of an inmate, and two other incidents of assaults of inmates. The defendant denied participation in these incidents and further asserted that the criminal charges related to these incidents were dismissed and he was found not guilty of any institutional violations by an administrative hearing officer. (*Id.* at 5). The Sentencing Memorandum discussed the facts surrounding these alleged incidents in

---

[1] During the sentencing hearing, the government advised the court that an error had occurred in the calculation of Ms. Adkins' relevant conduct. Defense counsel objected to this sentencing disparity and argued that Mr. Harper should receive the same benefit. (ECF No. 122 at 61-63).

4

detail. (*Id.* at 4-8). The Sentencing Memorandum also contained arguments concerning each of the factors under 18 U.S.C. § 3553(a), which the District Court was required to consider before sentencing the defendant. (*Id.* at 9-11).

The defendant's sentencing hearing took place on January 13-14, 2011. (ECF Nos. 98, 102). During the sentencing hearing, the defendant lodged objections to the relevant conduct attributed to him and the recommended denial of acceptance of responsibility.

At the sentencing hearing, Mr. Sword stated that the defendant agreed to the attribution of the 27 grams of cocaine base that was derived from the controlled purchases on July 2, 2009, July 6, 2009 and July 9, 2009. (ECF No. 121 at 62-63). However, the defendant persisted in his objection to any attribution of relevant conduct. (*Id.* at 63). Thus, the court proceeded to hear the testimony of Brandi Adkins, and Judy Ashworth, the confidential informant who participated in the three controlled buys, to support the government's contention that the defendant should be attributed an additional 7 ounces of cocaine base as relevant conduct. The United States also presented witness testimony concerning the defendant's involvement in the alleged assaults at the SCRJ. Mr. Sword strenuously cross-examined each of the witnesses.

Over the objection of the defendant, the district court found that the amount of cocaine base attributable to the defendant was 11 ounces (or 311.85 grams, which included the 27 grams of offense conduct)[2], resulting in a base offense level of 32 under the United States Sentencing Guidelines. (ECF No. 122 at 81, 84). The district court further found that the defendant had obstructed justice by attempting to coerce other

---

[2] This calculation was derived from Brandi Adkins' testimony that, on three separate occasions in late June and early July of 2009, she and the defendant purchased quantities of powder cocaine from Mike Hill, which the defendant cooked up into approximately 11 ounces of cocaine base which was then sold by the defendant and Adkins. (ECF No. 121 at 49-60; ECF No. 122 at 81, 84).

5

individuals to take responsibility for various drug amounts in order to absolve the defendant of that relevant conduct. Such enhancement raised the offense level to 34. The defendant was also denied any reduction for acceptance of responsibility due to this obstructive behavior, and his alleged involvement in the assaults at the SCRJ.

The district court then recalculated the Guideline range by reducing the crack cocaine to powder cocaine ratio from 18:1 to 10:1, which resulted in an adjusted offense level of 30, and an advisory Guideline range of 121 to 151 months in prison. The defendant did not object to that calculation. After considering the advisory Guidelines and the factors set forth in 18 U.S.C. § 3553(a), the district court sentenced the defendant to 121 months in prison, followed by a three-year term of supervised release.

### *The defendant's direct appeal*

The defendant appealed the district court's calculation of his Sentencing Guideline range. The defendant again challenged the calculation of relevant conduct, the application of the two-level enhancement for obstruction of justice, and the denial of the three-level reduction for acceptance of responsibility. On August 16, 2011, the United States Court of Appeals for the Fourth Circuit affirmed the defendant's sentence. *United States v. Harper*, 442 Fed. Appx. 857 (4th Cir. 2011). The defendant did not file a Petition for a Writ of Certiorari in the United States Supreme Court.

### *The defendant's amended section 2255 motion*

On August 6, 2012, the defendant filed his initial Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255 (hereinafter "section 2255 motion"). (ECF No. 129, 130). In his section 2255 motion, the defendant asserts that his former counsel, Matthew Victor, Jacqueline Hallinan and Phillip Sword provided ineffective assistance of counsel on the basis that they (1) failed to give the defendant proper notice of the

charges against him; (2) failed to object to the United States of America's change of position concerning relevant conduct; and (3) failed to fully investigate the allegations that the defendant assaulted other inmates while incarcerated.

On September 9, 2013, the defendant filed a Motion to Amend his section 2255 motion to add a claim that his sentence violates the Supreme Court's decision in *Dorsey v. United States*, 132 S. Ct. 2321 (2012), which was decided after the defendant's criminal judgment became final. (ECF No. 138).

On May 20, 2014, the undersigned ordered the United States to file a response to the defendant's section 2255 motion and the motion to amend. (ECF No. 141). On July 7, 2014, the undersigned directed each of the defendant's former court-appointed counsel to file an affidavit addressing each of the defendant's claims of ineffective assistance of counsel. (ECF No. 146).

### *The government's response*

On September 2, 2014, the United States filed its Response. (ECF No. 153). The Response asserts that the defendant's claims in his section 2255 and the proposed amendment thereto are improper attempts to circumvent the preclusive effect of the waiver contained in his plea agreement. (*Id.* at 1). The government's response first focuses on the validity and scope of the waiver in the plea agreement. (*Id.* at 9-16). The government asserts that none of the grounds alleged by the defendant fall outside the scope of the enforceable waiver, contending that the defendant's true complaint is with the sentence he received, not with the assistance of counsel, and that he should be precluded from making such claims. (*Id.* at 14-16).

Nevertheless, the government further asserts that the defendant cannot demonstrate that his counsel's conduct fell below an objective standard of reasonableness. Specifically, the Response states:

> Indeed, defendant's counsel at sentencing, Philip Sword, had fully reviewed relevant materials prior to sentencing. Doc. No. 150. Defense counsel thoroughly cross-examined the many witnesses presented by the United States at the sentencing hearing. Doc. No. 121, 122. Defendant's counsel also vigorously argued regarding the issues of relevant conduct, obstruction of justice, and acceptance of responsibility at the sentencing hearing. *Id.* Furthermore, defendant was supplied ample notice of the charges set forth in the indictment and acknowledged as much at his plea hearing and in his signed guilty plea; defense counsel met the standard for reasonable conduct by providing defendant with an explanation of the indictment. Doc. Nos. 43, 118.

(*Id.* at 18).

Finally, the government's Response asserts that the defendant's *Dorsey* claim is meritless, both because that claim does not concern the alleged ineffective assistance of counsel and, thus, is foreclosed by the waiver contained in his plea agreement, and also because any error would be harmless in light of the District Court's use of a 10:1 crack to powder cocaine ratio in calculating the defendant's Guideline range, which is more favorable than the 18:1 ratio as addressed in *Dorsey*. (ECF No. 153 at 19-20).

### *The defendant's reply*

On September 29, 2014, the defendant filed a Reply (ECF No. 154). The Reply again asserts that Brandi Adkins, who was one of the government's primary witnesses concerning relevant conduct, gave false statements concerning the amounts of cocaine base with which the defendant was involved. The defendant attached a number of exhibits to his Reply, which he contends demonstrates the fact that Adkins' testimony was not credible. The Reply further states:

8

> The failure of counsel to make such arguments and further to allow such blatant and knowing enhancements occur outside of the constitutional rights of the Movant herein clearly and factually defines the term of 'ineffective assistance of counsel' and this is further a direct and factual violation of the same Movant's Constitutional rights and must be adjudicated herein via this 28 U.S.C. § 2255 pleading before this Honorable Court.
>
> Further, the same counsel of record erred in relation to the allowance and failed arguments of the [sic] not only the enhancement in drug quantities, as cited above, but in fact further in relation to the allowance of the enhancement cited for obstruction of justice relative to again the same proffered testimony of the same witness, as cited above, Brandi Adkins, specifically in regards to a factual letter written to the counsel of record confirming the roles, as plead to, of the Movant herein.

(ECF No. 154 at 8). The defendant's Reply also appears to assert, for the first time in any of his briefs, that, under *United States v. Booker*, 543 U.S. 220 (2005), he was sentenced in violation of the Sixth Amendment because the court relied upon facts stated in the presentence report which were not found beyond a reasonable doubt by a jury or admitted by the defendant. (*Id.* at 12).

## **ANALYSIS**

The Supreme Court addressed the right to effective assistance of counsel as guaranteed by the Sixth Amendment in *Strickland v. Washington*, 466 U.S. 668 (1984), in which the Court adopted a two-pronged test. The first prong is competence; movant must show that the representation fell below an objective standard of reasonableness. *Id.*, at 687-91. There is a strong presumption that the conduct of counsel was in the wide range of what is considered reasonable professional assistance, and a reviewing court must be highly deferential in scrutinizing the performance of counsel. *Id.*, at 688-89.

> In order to meet the first prong, movant must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine

9

> whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. . . [C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.

*Id.*, at 690.

The second prong is prejudice; "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.,* at 694. The court may determine the prejudice prong prior to considering the competency prong if it is easier to dispose of the claim on the ground of lack of prejudice. *Id.,* at 697. In the context of a case in which a defendant pled guilty, he must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *Fields v. Attorney General,* 956 F.2d 1290 (4th Cir. 1992). The Sixth Amendment right to counsel extends to the plea-bargaining process. *See Lafler v. Cooper*, 132 S. Ct. 1376 (2012).

The defendant's direct appeal challenged the attribution of relevant conduct, the enhancement for obstruction of justice and the denial of acceptance of responsibility. Accordingly, not only are those substantive issues waived for purposes of collateral review by defendant's plea agreement, the defendant is also barred from re-asserting them in this collateral proceeding because they were presented and denied by the Fourth Circuit in his appeal. *See Boekenhaupt v. United States*, 537 F.2d 1182, 1183 (4th Cir. 1976).

To the extent that the defendant now asserts that his counsel's conduct with respect to these issues fell below an objective standard of reasonableness, the undersigned proposes that the presiding District Judge **FIND** that the defendant fails to establish the same. As noted in the government's response, a thorough review of the record demonstrates that, through the course of his plea proceedings, with the assistance of Ms. Hallinan, the defendant was provided with ample notice of the charges set forth in the indictment and acknowledged as much during his plea hearing and in the signed plea agreement.

Moreover, at sentencing, Mr. Sword had a sufficient command of the relevant case law and case materials; he thoroughly cross-examined the government's witnesses, including challenging the credibility of Brandi Adkins; and he vigorously argued against the attribution of additional relevant conduct, the enhancement obstruction of justice and the denial of acceptance of responsibility. Simply because the trial court found the government's evidence to be credible, does not render Mr. Sword's performance ineffective. Accordingly, the undersigned proposes that the presiding District Judge **FIND** that the defendant's claims of ineffective assistance of counsel lack merit, and that he is not entitled to any relief from this court.

Furthermore, the petitioner's argument, made for the first time in his Response, that his sentence violates the dictates of the Supreme Court's decision in *United States v. Booker*[3], fails for several reasons. First, the defendant's claim falls squarely within

---

[3] On January 12, 2005, the Supreme Court decided *United States v. Booker*, 543 U.S. 220 (2005), which reaffirmed the Court's holding in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), applied the holding in *Blakely v. Washington*, 542 U.S. 296 (2004) to the United States Sentencing Guidelines, and held: "Any fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." 543 U.S. at 244. The *Booker* holding applies "'to all cases

11

the waiver of collateral review contained in his plea agreement.  Second, the defendant was sentenced after *Booker* under an <u>advisory</u> guideline scheme.  Moreover, *Booker* has not been held to be retroactively applicable on collateral review.  Thus, the defendant would not presently be eligible for any relief thereunder.

Finally, the defendant's claim regarding the applicability of *Dorsey* is foreclosed by the waiver contained in the plea agreement and by the fact that the defendant was sentenced under a 10:1 crack to cocaine ratio, which is even more favorable than the 18:1 ratio discussed in *Dorsey*.

## **RECOMMENDATION**

For the foregoing reasons, it is respectfully **RECOMMENDED** that the presiding District Judge **DENY** the defendant's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence and dismiss this civil action from the docket of the court.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable John T. Copenhaver, Jr., United States District Judge.  Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), Rule 8(b) of the Rules Governing Proceedings in the United States District Courts Under Section 2255 of Title 28, United States Code, and Rule 45(c) of the Federal Rules of Criminal Procedure, the parties shall have fourteen days (filing of objections) and then three days (mailing/service), from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and

---

. . . pending on direct review or not yet final, with no exception for cases in which the new rule constitutes a "clear break" with the past.'" *Id.* at 268 (quoting *Griffith v. Kentucky*, 479 U.S. 314, 328 (1987)).

Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985*); United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be served on opposing parties and Judge Copenhaver.

The Clerk is directed to file this Proposed Findings and Recommendation, to mail a copy of the same to Movant, and to transmit it to counsel of record.

<u>July 22, 2015</u>

Dwane L. Tinsley
United States Magistrate Judge